A.W. by his Mother and Next Friend, MS. C.

v.

The **MARLBOROUGH COMPANY** and **Portland Healthcare Inc. d/b/a Elmcrest Psychiatric Institute, The Connecticut State Board of Education, and Theodore S. Sergi, The Commissioner of the Department of Education.**

No. 3:96CV2135 (AHN).

United States District Court, D. Connecticut.

Sept. 9, 1998.

*RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT*

NEVAS, District Judge.

The plaintiff, A.W., by his mother and next friend, Ms. C., brings this action against the defendants, the Marlborough Company and Portland Healthcare Inc. d/b/a Elmcrest Psychiatric Institute ("Elmcrest"), the Connecticut State Board of Education and Theodore S. Sergi, the Commissioner of the Department of Education (collectively referred to as the "State Defendants"), alleging violations of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, ("section 504"), and the Due Process Clause of the Fourteenth Amendment.

Now pending before the court are A.W.'s Motion for Summary Judgment, the State Defendants' Motion for Summary Judgment and Elmcrest's Motion for Summary Judgment. For the reasons set forth below, A.W.'s motion [doc. # 18] is DENIED, and the State Defendants' motion [doc. # 21] and Elmcrest's motion [doc. # 25] are GRANTED.

### STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson*, 477 U.S. at 258, 106 S.Ct. 2505. A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (internal quotation marks and citation omitted).

In assessing the record to determine whether a genuine dispute as to a material fact exists, the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).

The movant's burden does not shift when cross-motions for summary judgment are before the court; rather, each motion must be judged on its own merits. *See Association of Int'l Auto. Mfrs., Inc. v. Abrams*, 84 F.3d 602, 611 (2d Cir.1996) (citation omitted). Thus, neither party may be entitled to judgment as a matter of law despite the fact that cross-motions for summary judgment have been filed. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (citation omitted).

### FACTS

Ms. C. resides in Waterford, Connecticut and is the mother of A.W., a nine-year-old special education student. (*See* Pl.'s Statement of Material Facts not in Dispute [hereinafter "Pl.'s Stat."] ¶¶ 1-2; Elmcrest's Statement of Material Facts not in Dispute [hereinafter "Elmcrest's Stat."] ¶ 1; State Defs.' Statement of Material Facts not in Dispute [hereinafter "State Defs.' Stat."] ¶ 1.) The Waterford Board of Education ("Waterford") oversees the local school district responsible for meeting A.W.'s special education needs. (*See* Elmcrest's Stat. ¶ 2; State Defs.' Stat. ¶ 1.)

The Marlborough Company and Portland Healthcare Incorporated conduct a joint venture doing business as Elmcrest, which runs a Partial Hospitalization Program in Clinton, Connecticut. (*See* State Defs., Stat. ¶ 2.) Elmcrest contracts with local school districts to provide special education and related services to disabled students. (*See id.*)

In May, 1996, Waterford arranged for A.W. to receive special education at Elmcrest's Partial Hospitalization Program. (*See* Pl.'s Stat. ¶ 2; State Defs.' Stat. ¶ 3; Elmcrest's Stat. ¶ 3.) On May 28, 1996, after attending the program for one week, A.W. was assaulted by several students while riding in a van to Elmcrest. (*See* Pl.'s Stat. ¶ 3;

State Defs.' Stat. ¶ 3; Elmcrest's Stat. ¶ 4.) An emergency room report indicates that A.W. suffered multiple contusions and abrasions as a result of this altercation. (*See* Report of Wendy Witt, M.D. of 5/30/96.)

As a result of A.W.'s assault, Ms. C. brought separate special education due process complaints against Waterford and Elmcrest pursuant to section 504. (*See* State Defs.' Stat. ¶¶ 4–5; Elmcrest's Stat. ¶ 5.) The complaint against Elmcrest asked that a hearing officer determine whether Elmcrest's program was providing A.W. a free appropriate public education ("FAPE") in the least restrictive environment, and further requested that the officer determine the components of a FAPE for A.W.[1] (*See* Letter from Zimberlin to Elmer of 7/11/96.) The complaint against Waterford was settled by the parties, and A.W. was placed in a new program within the Waterford school system. (*See* State Defs.' Stat. ¶ 4; Elmcrest's Stat. ¶ 6.)

On July 3, 1996, the hearing officer held a preconference hearing regarding A.W.'s special education complaint against Elmcrest. (*See* Elmcrest's Stat. ¶ 7.) At that time, Elmcrest filed a motion to dismiss claiming that the hearing officer lacked jurisdiction over it as a private psychiatric institution. (*See* Elmcrest's Stat. ¶ 7; State Defs.' Stat. ¶ 5; Tr. of 7/3/96 at 8–10.) On September 13, 1996, after both parties were afforded an opportunity to file memoranda addressing this issue, the hearing officer dismissed the complaint because: "(1) [she] ha[d] no authority to enter an order for declaratory relief, be it a declaratory judgment or a declaratory ruling; (2) Elmcrest is not a proper party to the proceeding; and, (3) [Waterford] is an indispensable party in any determination of the issues presented by [Ms. C.]." (R.Ex. SB–21.) Then on October 21, 1996, A.W. commenced this action.

1. As relief, A.W. sought "[d]eclaratory relief as to the appropriateness of the past program and as to whether Elmcrest ha[d] met its legal obligations ... to comply with the law." (Tr. of 7/3/96 at 7.)

2. To the extent that A.W. contends that he was denied a hearing because he premised his claim

*DISCUSSION*

■ Section 504 provides, in pertinent part;

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794(a) (West Supp.1998). To establish a violation of section 504, a plaintiff must demonstrate

(1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is 'otherwise qualified' for the benefit that has been denied, (3) that he has been 'denied the benefits' solely by reason of his disability, and (4) that the benefit is part of a 'program or activity receiving Federal financial assistance.'

*Flight v. Gloeckler*, 68 F.3d 61, 63 (2d Cir. 1995) (citations omitted). The central purpose of this statute "is to assure that handicapped individuals receive evenhanded treatment in relation to the nonhandicapped." *P.C. v. McLaughlin*, 913 F.2d 1033, 1041 (2d Cir.1990) (citation and internal quotation marks omitted).

## I. *Denial of Grievance Hearing*

■ A.W. argues that he was denied a due process hearing by Elmcrest in violation of section 504's implementing regulations when the state hearing officer granted Elmcrest's motion to dismiss.[2] Specifically, A.W. relies on 34 C.F.R. § 104.7 which provides that "[a] recipient that employs fifteen or more persons shall adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by this part." 34 C.F.R. § 104.7(b) (1998). However, because

on section 504 instead of the IDEA, his claim lacks merit. According to the record, the hearing officer denied A.W. a hearing because (1) she had no authority to enter declaratory relief; (2) Elmcrest was not a proper party to such an action; and (3) Waterford was an indispensable party to such an action.

34 C.F.R. § 104.7 does not give rise to a private cause of action, this claim must be dismissed for lack of subject matter jurisdiction. *See Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 107 (2d Cir.1997) (stating that "a challenge to subject matter jurisdiction cannot be waived and may be raised ... *sua sponte* at any time") (citations and internal quotation marks omitted); *see also Celentano v. City of West Haven,* 815 F.Supp. 561, 565 n. 1 (D.Conn.1993) (recognizing that a "district court is free to evaluate whether a claim is jurisdictionally defective at any time during the course of litigation") (citations omitted).

■ This precise issue was recently addressed in *Guckenberger v. Boston Univ.,* 974 F.Supp. 106 (D.Mass.1997), where a group of learning disabled students brought a class action against Boston University ("BU") under the Americans with Disabilities Act, 42 U.S.C. §§ 1201 *et seq.,* ("ADA"), and section 504, claiming that BU's appellate procedure for disability accommodation requests did not " 'incorporate appropriate due process procedures' as mandated by 34 C.F.R. § 104.7(b)." *Guckenberger,* 974 F.Supp. at 142. While the court recognized that BU's appeals procedure was inadequate, it nonetheless concluded that "no private cause of action exist[ed] to enforce this regulatory due process provision." *Id.* at 143. Specifically, the court reasoned that "since the due process provision appear[ed] only in the administrative regulation, there [was] no evidence whatsoever ... that Congress intended to give private parties the right to a private remedy against institutions that fail[ed] to provide adequate grievance procedures." *Id.* at 143. The court further found that the omission of this requirement in the ADA, enacted well after section 504, demonstrated "a legislative intent not to use the federal antidiscrimination laws as a vehicle for guaranteeing due process rights." *Id. See also Stewart v. Bernstein,* 769 F.2d 1088, 1092 n. 6 (5th Cir.1985) (recognizing that the federal regulations accompanying the Medicaid Act did not create a private cause of action, absent a legislative intent to the contrary); *Cooper v. Gustavus Adolphus College,* 957 F.Supp. 191, 193–94 (D.Minn.1997) (finding no private cause of action where plaintiff

argued that Title IX's implementing regulations created "federal rights to a fair process for faculty members accused of sexual harassment").

■ This court finds the court's reasoning in *Guckenberger* persuasive and adopts it. Section 504 was intended to remedy disability discrimination, and consequently a plaintiff must demonstrate such discrimination to establish a claim under this statute. *See Flight,* 68 F.3d at 63. A procedural error, by itself, is insufficient to warrant the protections of the Rehabilitation Act. *See Guckenberger,* 974 F.Supp. at 144 (finding that "there is no statutory due process right separate from a right to be free from discrimination") (citation and internal quotation marks omitted); *cf. Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir.1994) (finding that Title IX claims alleging procedural flaws in a sexual harassment hearing must contain a "particularized allegation relating to a causal connection between the flawed outcome and gender bias"). Thus, absent any Congressional intent to the contrary, the court declines to expand the scope of section 504 to encompass a statutory right to due process under 34 C.F.R. § 104.7.

■ Nonetheless, even if the court had recognized a cause of action under 34 C.F.R. § 104.7, it would have dismissed A.W.'s section 504 claim. A.W. does not allege discrimination on the basis of his disability, but instead simply challenges the adequacy of his FAPE. While both the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA") and section 504 mandate that local educational agencies provide a FAPE to children with disabilities, the scope of protection afforded under each of these statutes is somewhat different. *See Wenger v. Canastota Cent. Sch. Dist.,* 961 F.Supp. 416, 422 (N.D.N.Y.1997). "Section 504 provides relief from discrimination, whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination." *Wenger,* 961 F.Supp. at 422 (citation omitted). Based on this distinction, courts have found that, in order to establish a section 504 violation, a plaintiff must demonstrate bad faith or gross misjudgment in

addition to the denial of a FAPE. *See Sellers v. School Bd. of Mannassas,* 141 F.3d 524, 529 (4th Cir.1998), petition for certiorari filed, 67 U.S.L.W. 3083 (Jul. 13, 1998) (No. 98–79); *Monahan v. State of Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982); *K.U. v. Alvin Indep. Sch.,* 991 F.Supp. 599, 603 (S.D.Tex. 1998); *Walker v. District of Columbia,* 969 F.Supp. 794, 797 (D.D.C.1997); *Wenger,* 961 F.Supp. at 422.

■ Here, A.W. has neither demonstrated nor alleged that that the defendants discriminated against him on account of his disability, *i.e.,* that they acted with bad faith or gross misjudgment. In fact, A.W. sought a due process hearing simply to determine both the components of his FAPE and whether Elmcrest had provided him a FAPE. Such issues call into question A.W.'s educational assessment, placement and programming and do not demonstrate that A.W. has been subjected to discrimination on account of his disability.

Accordingly, summary judgment is GRANTED in favor of Elmcrest and the State Defendants on A.W.'s section 504 claim.

## II. *Denial of Due Process*

■ In Count Two, A.W. asserts that the defendants denied him substantive and procedural due process in violation of 42 U.S.C. § 1983. In order to make out a procedural due process claim, a plaintiff must (1) identify a property right, (2) demonstrate that he was deprived of that right, and (3) show that the denial was achieved without due process. *See Local 342, Pub. Serv. Employees v. Huntington,* 31 F.3d 1191, 1194 (2d Cir.1994) (citation omitted). To support a substantive due process claim, A.W. must identify a property interest and explain how it has been interfered with by the govern-

ment. *See Greene v. Town of Blooming Grove,* 935 F.2d 507 (2d Cir.1991). He must also allege that this deprivation was arbitrary or not reasonably related to a legitimate government interest. *See Williams v. Texas Tech. Univ. Health Sciences Ctr.,* 6 F.3d 290, 294 (5th Cir.1993).

■ Assuming, *arguendo,* that A.W. has a property interest in a special education, his due process claims fail as a matter of law because neither Elmcrest nor the State Defendants interfered with or deprived him of this interest, as is required to establish claims for procedural and substantive due process.[3] A.W. maintains that the May 28, 1996 bus incident deprived him of a property right. The court disagrees and finds that the defendants inability to prevent this isolated assault did not constitute a deprivation of A.W.'s constitutional rights. This is not a case where a child was assaulted on multiple occasions; the defendants had notice of such assaults; and nothing was done to remedy the matter. Under such a scenario, a child might be able to demonstrate a deprivation of his constitutional rights. Here, the incident occurred on A.W.'s fifth day of school, and Ms. C. immediately removed A.W. from Elmcrest in response. While the court does not condone the fact that this child was subjected to physical violence at the hands of his classmates, an appropriate remedy for such an injury should be pursued at common law rather than in a federal forum. To hold that this isolated episode resulted in a deprivation of A.W.'s property interest in a special education would allow a student to bring a claim of this nature every time he gets into a school-yard scuffle. The court declines to do this and thus, finds that summary judgment should be GRANTED for the defendants on this claim.

---

3. Although the court need not reach this issue, it questions the defendants' claim that A.W. does not have a property interest in a special education given the unequivocal language of Conn. Gen.Stat. § 10–76d(b). This statute provides that "each local and regional board of education shall: (1) Provide special education for school-age children requiring special education ... The obligation of the school district under this subsection shall terminate when such child is graduated from high school or reaches age twenty-

one." Conn.Gen.Stat.Ann. § 10–76d(b) (West Supp.1998). Such language arguably conveys that Connecticut children are *entitled* to a special education. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (recognizing that to have a property interest a person must "have a legitimate claim of entitlement to it"). *See also Broadley v. Board of Educ.,* 229 Conn. 1, 5, 639 A.2d 502 (1994) (implying that a property interest exists in special education for children with disabilities).

### III. *Review of Hearing Officer's Decision*

Finally, A.W. asks the court to review the hearing officer's decision dismissing his section 504 claim. Because A.W. has failed to make out a claim under section 504, the court declines to conduct such a review in this instance. Accordingly, summary judgment is GRANTED for both Elmcrest and the State Defendants on this claim.

### CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [doc. # 18] is DENIED and the State Defendants' Motion for Summary Judgment [doc. # 21] and Elmcrest's Motion for Summary Judgment [doc. # 25] are GRANTED. The Clerk of Court is directed to close this case.