**Michael J. and Daniele P. POWER, as parents and next friends of Eric E. POWER, a minor, Plaintiffs,**

v.

**SCHOOL BOARD OF THE CITY OF VIRGINIA BEACH, Defendant.**

**No. 203CV309.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 7, 2003.

Darrel T. Mason, Esquire, Glen Allen, VA, for Plaintiffs.

Kamala H. Lannetti, Associate City Attorney, Virginia Beach, VA, for Defendant.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This case is before the court on defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure (12)(b)(1), and alternatively, Rule 12(b)(6). For the reasons stated below, defendant's motion to dismiss is **GRANTED**.

### I. Factual and Procedural History

This case involves a challenge to the procedures by which the School Board of the City of Virginia Beach, Virginia ("School Board") has attempted to comply with the requirements of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), which prohibits discrimination on the basis of a disability.[1] Eric E. Power ("Eric") was enrolled in the Virginia Beach City Public School System in the fall of 2002, entering Cox High School as a ninth grader. Because he was diagnosed as having severe Attention Deficit Hyperactivity Disorder ("ADHD"), Eric was declared eligible for special educational accommodations, pursuant to Section 504.[2]

On October 29, 2002, Eric brought a pellet gun onto the property of Cox High School, which gun was discovered by school administrators. Pursuant to the Virginia Code, a mandatory expulsion of at least one year is required for possessing a firearm on school property.[3] However,

---

1. The Section 504 regulations require the establishment of procedural mechanisms that protect the rights of students and parents to participate in and exert influence over the educational process. *See* 34 C.F.R. § 104.36 (2002).

2. These accommodations include priority seating in the classroom, extended time on all tests, quizzes, or exams, and his teacher's signature on his homework assignments.

(See Section 504 Student Accommodation Plan, attached as Ex. 2 to Def.'s Mot. to Dismiss Complaint Pursuant to Fed. Rules of Civil Pr. 12(b)(1) and 12(b)(6) and Mem. in Opposition to Request for Prelim. Inj., hereinafter "Def's Mot. to Dismiss.")

3. Virginia Code section 22.1–277.01(A) provides, in pertinent part:

In compliance with the federal Improving America's Schools Act of 1994 (Part F–

the School Board's Administrative Guidelines provide that, before disciplining a Section 504 student, the school must convene a committee to conduct a "manifestation hearing" to determine whether the behavior at issue resulted from the student's qualifying disability. (Section 504 Administrative Guidelines, Virginia Beach City Public Schools, at 10–11, attached as Ex. A to Pls.' Compl., hereinafter "Administrative Guidelines.")[4] If the manifestation committee determines that the conduct was a manifestation of the disability, the student may not be expelled. If the committee determines that the conduct is not a manifestation of the disability, then the school may discipline the student through the regular disciplinary channels. (*Id.*)[5]

On October 31, 2002, Eric's manifestation determination review was held. The hearing was delayed because the parents wished certain parties to be present. After reviewing information from Eric's psychiatrist, testimony from Eric, and other information regarding the incident, the manifestation committee unanimously determined that the incident was not a manifestation of Eric's disability and approved disciplinary action for Eric.[6] Eric and his parents were informed of their right to appeal the determination of the manifestation hearing. (*Id.* at 20, 26.)

On November 1, 2002, Eric's parents appealed the manifestation determination. On November 6, 2002, the Office of Programs for Exceptional Children of the City of Virginia Beach Public Schools appointed James T. Lloyd, Jr., a disinterested third party, as the hearing officer for the appeal. Mr. Lloyd is on the Virginia Supreme Court's list of certified Special Education Hearing Officers. At the hearing, which was conducted over a four-day period in January 2003, Mr. Lloyd heard testimony from eighteen different witnesses and reviewed over eighty exhibits.[7] On February 28, 2003, Mr. Lloyd issued his decision, finding that the School Board had the burden of proving that the incident was not a manifestation of Eric's disability, that the School Board committed no procedural violations in the manifestation hearing, and reversing the school's determination of whether the incident was a manifestation of Eric's ADHD.

Pursuant to the Administrative Guidelines, both the School Board and the plaintiffs appealed portions of the hearing officer's decision to the next level in the process, a reviewing officer. (Administrative Guidelines at 20.) The School Board appointed Wanda Allen, a disinterested third party, as the reviewing officer. Ms. Allen is on the Virginia Supreme Court's list of certified Special Education Hearing

Gun–Free Schools Act of 1994), a school board shall expel from school attendance for a period of not less than one year any student whom such school board has determined ... to have brought a firearm onto school property ....

4. The Administrative Guidelines provide that the composition of the manifestation committee "should include a central office representative and other individuals as appropriate: principal/designee, student's teacher(s), student (if appropriate), and staff knowledgeable about the student's function and the meaning of the qualification data." (Administrative Guidelines at 11.)

5. Cox High School's regular procedure involves holding a student disciplinary hearing before disciplining a student.

6. In this case, the student disciplinary hearing proceedings have been stayed pending appeal of the manifestation committee's findings.

7. In December 2002, Eric was withdrawn from the Virginia Beach Public School System and enrolled in a private school, despite the School Board's offer to provide Eric with homebound education until the proceedings were concluded and resolved.

Officers. Eric's parents objected in a letter sent to the Director of the Office of Programs for Exceptional Children to the manner in which the reviewing officer had been hired, and they also challenged the scope of the review on appeal. (Letter from Mason to Mitchell of 3/26/03, attached as Ex. G to Pl.'s Compl.) Ms. Allen has not yet issued a ruling in this matter.

Eric, through his parents, filed the instant suit on April 23, 2003, against the School Board, alleging that the School Board's policies are violative of Section 504 because they do not provide adequate procedural safeguards. Plaintiffs do not allege that Eric has been discriminated against on the basis of his disability. Plaintiffs request that this court sustain in part, and reverse in part, the findings of the hearing officer. They further request injunctive relief to prevent the School Board from carrying out its appeal to the reviewing officer and declaratory relief regarding the inadequacy of the School Board's Administrative Guidelines.

Defendant submitted a motion to dismiss, arguing the court does not have subject matter jurisdiction over this claim because (1) there is no private right of action to enforce this regulatory right to procedural safeguards; and (2) the claim is not ripe.[8]

## II. Standard of Review

Defendant contends in the motion before this court that the plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). With respect to jurisdiction, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that " 'federal courts are

courts of limited jurisdiction and are empowered to act only in those specific instances authorized by Congress.' " *Goldsmith v. Mayor & City Council,* 845 F.2d 61, 63–64 (4th Cir.1988) (quoting *Bowman v. White,* 388 F.2d 756, 760 (4th Cir.1968)) (discussing subject-matter jurisdiction specifically). *See also Plyler v. Moore,* 129 F.3d 728, 731 n. 6 (4th Cir.1997) (subject matter jurisdiction must be considered whenever raised or even *sua sponte* ).

A motion under Federal Rule of Civil Procedure 12(b)(1) may attack subject matter jurisdiction in two critically different ways. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The attack to jurisdiction may be based upon a facial deficiency in the pleadings, or on facts that exist separately from the pleadings. In both situations, the burden of establishing jurisdiction rests with the plaintiff as the party asserting jurisdiction. *Id.* The moving party should prevail " 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.' " *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999) (quoting *Richmond, F. & P.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991)).

Defendant moves to dismiss plaintiffs' complaint based on the argument that the allegations in the pleadings are insufficient to invoke federal court jurisdiction because there is no private right of action that would allow the court to hear a claim brought by a private citizen to enforce the implementing regulations of Section 504. Defendant further argues that, if such a private right of action exists, the court has no jurisdiction because plaintiffs' claims are not ripe for review.

---

**8.** Alternatively, defendant submits that the plaintiffs have failed to state a claim for injunctive relief, pursuant to Rule 12(b)(6), which this court does not reach, given the conclusion that the court is without subject matter jurisdiction over the case. *See infra* section III.B.

### III. Analysis

#### A. Statutory Scheme

Plaintiffs argue that defendant violated Eric's procedural rights under Section 504. Count One alleges that the School Board violated Eric's procedural rights by (1) failing to recognize that he was a Section 504 student before originally expelling him; (2) failing to give timely notice of the manifestation review; (3) failing to consider whether the scheduling of the review was convenient to his parents; and (4) failing to consider all factors necessary in determining manifestation. Counts Two and Three allege that the School Board's written policies concerning Section 504 students are inadequate.

■ Section 504 of the Rehabilitation Act of 1973 provides that:

> no otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance....

29 U.S.C. § 794(a). To establish a violation of Section 504, a plaintiff must demonstrate that: (1) he has a disability for purposes of the Rehabilitation Act; (2) that he is "otherwise qualified" to participate in school activities; (3) that the defendant is a recipient of federal financial assistance; and (4) that he was subject to discrimination solely on the basis of his disability. *Pandazides v. Virginia Bd. of Educ.,* 13 F.3d 823, 833 (4th Cir.1994).

Section 504 itself contains no procedural rights, nor guarantees them. Instead, the regulations promulgated under Section 504 require the establishment of procedural safeguards to protect the rights of students and parents to participate in the educational process. *Weber v. Cranston Public Sch. Comm.,* 245 F.Supp.2d 401, 407 (2003). Specifically, 34 C.F.R. § 104.36 provides:

> A recipient that operates a public elementary program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure.

34 C.F.R. `§ 104.36. Neither the United States Department of Education nor the Virginia Department of Education requires a local educational program to follow specific procedures with regard to Section 504.[9] The School Board has promulgated its own administrative guidelines to implement procedural safeguards for disciplining Section 504 students. (Administrative Guidelines at 2–12.)

#### B. Adequacy of Procedural Safeguards

■ Plaintiffs' basis for this suit is that the School Board violated Section 504 by adopting procedures that are inadequate. Regardless of the merits of plaintiffs' claim, however, no private cause of action exists to enforce this regulatory due process provision. While Section 504 clearly provides for a private cause of action to enforce a claim of *discrimination,*

---

**9.** Compliance with the procedural system set forth in the Individuals with Disabilities Education Act, 20 U.S.C. § 1415, is one means of satisfying this requirement. *See* 34 C.F.R.

§ 104.36. However, this is not a mandate. School systems are free to develop their own procedures with respect to Section 504 students. *Id.*

*see, e.g., Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), it does not provide for a cause of action to assert a claim of procedural inadequacy, separate and apart from a claim of discrimination.

A similar issue was addressed in *Guckenberger v. Boston Univ.,* 974 F.Supp. 106, 142 (D.Mass.1997), where a group of learning disabled students claimed that Boston University ("BU") violated Section 504 because BU's appellate procedure did not incorporate adequate due process procedures as mandated by 34 C.F.R. § 104.7.[10] Although the court found that BU's appeals procedure was indeed inadequate, the court nonetheless dismissed the plaintiffs' claim, concluding that there was no private cause of action to enforce the regulatory provision. 974 F.Supp. at 143. Applying the factors set out by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[11] the *Guckenberger* court determined that because the due process provision appeared only in the federal regulations, and not in the statute itself, no evidence existed "that Congress intended to give private parties the right to a private remedy against institutions that failed to provide adequate grievance procedures." 974 F.Supp. at 143. Other courts have similarly declined to recognize private rights of action under other administrative regulations that go beyond the substantive authorization of the statute. *See Dopico v. Goldschmidt,* 687 F.2d 644, 651 (2d Cir.1982) (holding that even though there was an implied right of action

to maintain a suit for discrimination under Section 504, there was no right to enforce the underlying regulations which exceed the substantive scope of the statute); *A.W. v. Marlborough Co.,* 25 F.Supp.2d 27, 31 (D.Conn.1998) (adopting *Guckenberger's* reasoning and finding no private cause of action under 34 C.F.R. § 104.7(b)); *see also Cooper v. Gustavus Adolphus Coll.,* 957 F.Supp. 191, 193–94 (D.Minn.1997) (rejecting private right of action under Title IX regulation providing for the right to a "fair process" for sexual harassment hearing).

■ The court's reasoning in *Guckenberger* applies with equal force to 34 C.F.R. § 104.36, which is at issue in this case. As stated earlier, the regulations do not delineate any specific procedures with regard to Section 504, and they do not expand the substantive scope of the statute. Section 504 was intended to remedy disability discrimination. The central purpose of the statute "is to ensure that handicapped individuals receive evenhanded treatment in relation to the nonhandicapped." *P.C. v. McLaughlin,* 913 F.2d 1033, 1041 (2d Cir.1990). Consequently, in order to establish a violation thereof, a plaintiff must demonstrate such discrimination. "A procedural error, *by itself,* is insufficient to warrant the protections of the Rehabilitation Act." *Marlborough,* 25 F.Supp.2d at 31 (emphasis added). There is no statutory due process right separate and apart from the right to be free from discrimination. *Guckenberger,* 974 F.Supp. at 144. To hold otherwise would

---

**10.** Section 104.7(b) provides, in part, that a recipient of federal funding "shall adopt grievance procedures that incorporate appropriate due process standards that provide for prompt and equitable resolution of complaints alleging any action prohibited by this part." 34 C.F.R. § 104.7(b).

**11.** The *Cort* factors are: (1) whether the plaintiff is a member of the class for whom

the statute was created; (2) whether there is an indication of legislative intent either to create or deny a private remedy; (3) whether a private right of action is consistent with the purposes underlying the statute; and (4) whether the cause of action is traditionally relegated to state law. 422 U.S. at 78, 95 S.Ct. 2080.

subvert the plain meaning of discrimination in the statute and invite a flood of litigation in the special education context.

Here, plaintiffs have not alleged that defendant discriminated against Eric because of his disability.[12] They have alleged only that the School Board's policies and procedures are not adequate, and specifically they object to the review procedures under the School Board's Administrative Guidelines. Absent any Congressional directive to the contrary, the court declines to expand the scope of Section 504 to provide a private cause of action to enforce a regulatory right to due process under 34 C.F.R. § 104.36. Therefore, the court has no subject matter jurisdiction over this case.

### C. Ripeness

■ Finally, defendant contends that even if the court did recognize a private cause of action under 34 C.F.R. § 104.36, plaintiffs' claims must still be dismissed because they are not ripe. While it is true that Section 504 claims are not subject to exhaustion requirements, they do, however, require finality before becoming judicially reviewable. The ripeness requirement "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete, injury." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 193, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

■ For a case to be ripe, it must involve "an administrative decision [which] has been formalized and its effects felt in a concrete way by the challenging parties." *Charter Fed. Sav. Bank v. Office of Thrift*

*Supervision,* 976 F.2d 203, 208 (4th Cir. 1992) (quoting *Pacific Gas & Elec. v. Energy Resources Comm'n,* 461 U.S. 190, 200, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). In *Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court set forth the two-prong test now used by courts for determining ripeness: (1) whether the issues are fit for judicial decision and (2) whether hardship will fall to the petitioning party on withholding court consideration. *Id.* at 149, 87 S.Ct. 1507.

■ At a threshold level, the court questions whether the ripeness doctrine is applicable to this case. To the extent that plaintiffs challenge the School Board's procedures with regard to Section 504 students, they have no cause of action.[13] To the extent that plaintiffs question the decision of the hearing officer, however, their claim is not ripe. The administrative procedures regarding Eric are still pending. Plaintiffs requested an impartial hearing to review the decision of the manifestation committee. The hearing officer issued his decision, portions of which are now being appealed by both parties to a reviewing officer. Because the reviewing officer has not issued her decision, this court could not assert jurisdiction over any viable Section 504 claims asserted by plaintiffs.[14]

### IV. Conclusion

For the above-stated reasons, defendant's motion to dismiss is **GRANTED**, pursuant to Rule 12(b)(1), because there is no private right of action to enforce a regulatory right to due process under 34 C.F.R. § 104.36. The court, therefore, lacks subject matter jurisdiction over the

---

12. In fact, both parties agree that Eric received a favorable decision from the hearing officer.

13. *See supra* section III.B.

14. Nor can the plaintiffs demonstrate any hardship. Eric is enrolled in a private school, after plaintiffs refused the School Board's offer to provide homebound schooling, pending resolution of the case.

action. Plaintiffs' complaint is **DISMISSED**. The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to counsel for the parties.

IT IS SO ORDERED.